**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ERICKSON PRODUCTIONS, INC.; JIM ERICKSON, *Plaintiffs-Appellees*, v. KRAIG RUDINGER KAST, *Defendant-Appellant*. | No. 15-16801 D.C. No. 5:13-cv-05472-HRL OPINION |

Appeal from the United States District Court
for the Northern District of California
Howard R. Lloyd, Magistrate Judge, Presiding

Argued and Submitted March 25, 2019
San Francisco, California

Filed April 16, 2019

Before: Sidney R. Thomas, Chief Judge, and Michael Daly
Hawkins and M. Margaret McKeown, Circuit Judges.

Opinion by Judge Hawkins

# SUMMARY[*]

## Copyright

The panel affirmed in part and reversed in part the district court's judgment finding that the defendant vicariously and contributorily infringed plaintiffs' copyrighted images by displaying them on his website and did so willfully.

Defendant hired a website developer to redevelop the website of his business. Three photos, taken by plaintiffs and licensed to Wells Fargo Private Bank through plaintiff's company, were incorporated into defendant's website.

The panel vacated the jury's vicarious liability verdict, which found that defendant vicariously infringed plaintiff's copyright through his employment of the website developer, the direct infringer. The panel held that to prevail on a vicarious liability claim, the plaintiff must prove that the defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity. The panel held that plaintiffs presented no evidence that could constitute a direct financial benefit as a matter of law. Specifically, the website developer's avoidance of licensing fees for the photos did not confer a direct financial benefit on defendant.

The panel affirmed the jury's contributory liability verdict and therefore affirmed the judgment. A party engages in contributory copyright infringement when it

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

(1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement. Reviewing for plain error, the panel held that the district court did not plainly err in instructing the jury that "knowledge" for contributory infringement purposes includes having a "reason to know" of the infringement.

The panel vacated the jury's willfulness finding and remanded for a determination of whether defendant's infringement was willful on the existing record. A finding of willfulness requires a showing of recklessness, willful blindness, or actual knowledge, and merely negligent conduct is not willful. The panel held that the district court therefore erred when it instructed the jury that it could find that defendant's infringement was willful if he "should have known" that his acts infringed plaintiffs' copyright.

---

## COUNSEL

Christopher J. Cariello (argued), Margaret Wheeler-Frothingham, and Paul M. Fakler, Orrick Herrington & Sutcliffe LLP, New York, New York, for Defendant-Appellant.

Kevin P. McCulloch (argued) and Nathaniel A. Kleinman, New York, New York, for Plaintiffs-Appellees.

---

## OPINION

HAWKINS, Senior Circuit Judge:

Defendant-Appellant Kraig Kast ("Kast") appeals a jury verdict finding that he vicariously and contributorily infringed Plaintiffs-Appellees Erickson Productions, Inc. and Jim Erickson's (collectively, "Erickson") copyrighted images by displaying them on his website and did so willfully. We vacate the jury's vicarious liability verdict but affirm its contributory liability verdict, so we uphold the judgment against Kast. We vacate the jury's willfulness finding and remand for a determination of whether Kast's infringement was willful on the existing record.

This opinion addresses Kast's appeal of the judgment against him, Case No. 15-16801. The panel will address Kast's related appeal of the district court's amendment of the judgment against him, Case No. 17-17157, in a separate memorandum disposition.

### FACTS AND PROCEEDINGS BELOW

### I.  Factual Background

Kast is a California resident who owns and operates various business entities and websites. One such business is Atherton Trust, a real estate wealth management company. In 2010, an opportunity arose for Atherton Trust to be appointed by the State of California to manage the estates of disabled persons. Kast thought a revamped website would enhance Atherton Trust's prospects; so, he hired a website developer, Only Websites, to redevelop the site. Among other things, Kast "agree[d] to provide content and other material . . . throughout the development process." Kast's

approval would be required on all work, "including the design, development and finalization of the website."

To facilitate development, Kast completed a questionnaire outlining his goals for the revamped website. Kast identified Wells Fargo Private Bank ("Wells Fargo") as one of Atherton Trust's competitors and highlighted certain features of Wells Fargo's website he found appealing. Kast also stated in emails that he wanted to mimic Wells Fargo's website. Further, Kast noted that he "need[ed] to choose photos from options" provided by Only Websites.

Kast closely managed the development process. For instance, after reviewing an early draft of the developmental website, Kast stated that he "like[d] what [Only Websites did] with the home page layout." On the other hand, Kast wanted the logo "to be warmer like" Wells Fargo's and the photos "to be more casual like" Wells Fargo's. Likewise, Kast later requested that Only Websites move the placement of Atherton Trust's logo and company name.

Eventually, three photos from Wells Fargo's website—which were taken by Jim Erickson and licensed to Wells Fargo through his company, Erickson Productions, Inc.—were incorporated into Atherton Trust's developmental website.[1] Neither Atherton Trust, Kast, nor Only Websites licensed the photos. Erickson discovered the infringement via Picscout, a "software that tracks imagery online" by running nightly internet-wide searches. In July 2011, Erickson demanded that Atherton Trust "cease and desist infringing its copyright" and pay damages. Kast promptly

---

[1] Neither the record nor the trial transcript reveals whether Kast directed Only Websites to include the photos or whether Only Websites did so unilaterally.

directed Only Websites to remove the photos, which was done the next morning, but refused to pay.

## II.  Procedural Background

### a.  The trial and the jury's verdict against Kast

Erickson filed suit in the Central District of California, alleging direct, vicarious, and contributory copyright infringement.[2] Erickson contended that the infringement was willful, and therefore subject to enhanced damages under 17 U.S.C. § 504(c)(2).

The case was transferred to the Northern District of California, where it proceeded to trial by consent before a magistrate judge.

Two divergent narratives emerged at trial. Erickson portrayed Kast as an opportunistic, cost-cutting businessperson who rushed completion of Atherton Trust's developmental website in an effort to generate additional income through state-appointed estate management. Erickson's counsel elicited testimony from Kast at trial that he first became aware that the photos in question were on Atherton Trust's website in January 2011, and the photos remained there until Kast received the July 2011 demand letter. Erickson claimed that including the unlicensed photos not only allowed Kast to continue pursuing the business

---

[2] Erickson initially sued Kast in the Southern District of New York, but his complaint was dismissed for lack of personal jurisdiction. *See Erickson Prods., Inc. v. Atherton Trust*, No. 12 Civ. 1693 (PGG), 2013 WL 1163346 (S.D.N.Y. March 20, 2013). Erickson obtained a default judgment against Only Websites. Order of Default, *Erickson Prods.*, No. 1:12-cv-01693-PGG-KNF (S.D.N.Y. Nov. 28, 2012).

opportunity he so desired, but also avoided the required developmental licensing fee.

Kast painted a different picture. He agreed "the Atherton Trust website included unauthorized copies of [Erickson's] photos that were copied from" Wells Fargo's website. But, according to Kast, Only Websites copied the photos without his consent. Kast also pointed to a provision in his contract with Only Websites, which stated that "Client [Kast] is responsible for obtaining copyright releases and licenses on all photographs it sends to Provider. Limit of 2 photographs provided by Provider for every page except the home page." Kast testified he understood this provision to mean that "[a]nything that I sent to them had to be licensed," but that "if they provided the photos, [they] had to provide licensed photos." Similarly, Kast asserted that had he known he needed to license photos for the developmental site, he would have done just that; in fact, he later and on his own licensed two stock photos for the site's "live" version. Separately, Kast argued he lacked control over Only Websites: Only Websites published the website without his consent and ignored multiple requests to replace the infringing photos. Finally, Kast contended that he did not reap a financial benefit from the infringing photos because "[h]e made no money off the website" and "avoid[ing] a license fee" is not a direct financial benefit.

At the charging conference, the parties wrangled over the wording of the willfulness jury instruction. Erickson sought an instruction that Kast acted willfully if he knew he infringed Erickson's copyrights, acted with reckless disregard for Erickson's copyrights, or "should have known" his actions infringed Erickson's copyrights. Kast objected to the "should have known" prong, arguing that it set the standard "much lower than recklessness." The district court

agreed with Erickson and included the "should have known" prong.

The jury found by special verdict that Kast vicariously and contributorily (but not directly) infringed Erickson's copyright on each of the photos and did so willfully. Pursuant to 17 U.S.C. § 504(c)(2), the jury awarded Erickson $150,000 in damages per photograph, for total damages of $450,000.

### b.  The instant appeal

Kast timely appealed the district court's judgment against him.  Kast initially briefed his case without the assistance of counsel.  We appointed pro bono counsel to assist Kast with two of the issues he raised in his opening brief: (1) whether the avoidance of licensing fees constitutes a direct financial benefit for purposes of imposing vicarious copyright liability; and (2) whether a "should have known" willfulness instruction is proper under 17 U.S.C. § 504(c). The parties submitted supplemental briefing on these issues, the former an issue of first impression in this circuit.  We now consider whether to affirm (1) the jury's vicarious liability verdict, (2) the jury's contributory liability verdict, and (3) the jury's willfulness finding.  We also address (4) some additional evidentiary and procedural matters.

### STANDARDS OF REVIEW

"We review the district court's denial of a motion for directed verdict de novo."  *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1109 (9th Cir. 2011).  Legal questions are reviewed de novo so long as they are "raise[d] . . . at some point before the judge submitted the case to the jury[.]" *F.B.T. Prods., LLC v. Aftermath Records*, 621 F.3d 958, 962–63 (9th Cir. 2010).

Jury instructions "must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading." *Gantt v. City of Los Angeles*, 717 F.3d 702, 706 (9th Cir. 2013) (quotation marks and citation omitted). If a jury instruction is incorrect, reversal is appropriate "unless the error is more probably than not harmless." *Chuman v. Wright*, 76 F.3d 292, 294 (9th Cir. 1996). If a party fails to object to a jury instruction in the district court, it can still be reviewed on appeal for plain error. *See Hoard v. Hartman*, 904 F.3d 780, 786 (9th Cir. 2018). "We may exercise our discretion to correct a district court on plain error review when the following factors are met: (1) the district court erred; (2) the error was obvious or plain; (3) the error affected substantial rights; and (4) the error seriously impaired the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 787 (quotation marks and citation omitted).

"We review the district court's rulings concerning discovery and evidentiary issues for an abuse of discretion and reverse only if the district court's ruling more likely than not affected the verdict." *Kulas v. Flores*, 255 F.3d 780, 783 (9th Cir. 2001) (citations omitted).

## DISCUSSION

## I.  The Vicarious Liability Verdict

The jury found that Kast vicariously infringed Erickson's copyright through his employment of Only Websites, the direct infringer. "To prevail on a vicarious liability claim, [plaintiff] must prove [defendant] has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *VHT, Inc. v. Zillow Group, Inc.*, 918 F.3d 723, 745 (9th Cir.  2019)

(citing *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir. 2017) (internal quotation marks omitted).

Kast argues the judge erred in denying his motion for a directed verdict on vicarious liability because Erickson presented no evidence that could constitute a direct financial benefit as a matter of law.[3]  We agree and vacate the jury's vicarious liability verdict.

"The essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps . . . ." *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004).  Erickson claims Kast received three "direct financial benefits" from Only Websites' infringement: (1) the photographs drew customers to purchase his services; (2) he avoided paying licensing fees to Erickson; and (3) he was able to "rush" the launch of his website.  Each one fails.

---

[3] Kast also argues that the jury's vicarious liability verdict was not supported by sufficient evidence.  Kast failed to renew his motion for a directed verdict in the trial court, so his sufficiency of the evidence argument is forfeited.  *See Nitco Holding Corp. v. Boujikian*, 491 F.3d 1086, 1089 (9th Cir. 2007) ("[A] post-verdict motion under Rule 50(b) is an absolute prerequisite to any appeal based on insufficiency of the evidence.") (citing *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394 (2006)).  Insofar as Kast's arguments address whether certain alleged benefits were "direct financial benefits" as a matter of law, rather than whether the evidence established that Kast received those benefits, they are unaffected by this rule.  *See Cochran v. City of Los Angeles*, 222 F.3d 1195, 1200 (9th Cir. 2000) (failure to renew post-verdict a motion for judgment as a matter of law made at the close of evidence does not prevent our review of an "issue [that] does not concern the sufficiency of the evidence presented to the jury.").

### a. Enhanced attractiveness of Kast's website

A website owner can receive a direct financial benefit from the presence of infringing material on his or her website, but only "where the availability of infringing material acts as a draw for customers." *Ellison*, 357 F.3d at 1078 (internal quotation marks and citation omitted). If the infringing material is "just an added benefit," rather than a draw, it does not confer a direct financial benefit on the website owner. *See id.* at 1078–79.

Erickson claims the photographs enhanced the general attractiveness of Kast's website to customers, and thereby "drew" visitors to purchase his services. Erickson argues that, because the whole purpose of the website was to advertise Kast's wealth management company, Kast had a direct financial interest in everything on the website that enhanced its appeal to potential customers. However, a financial benefit is not "direct" unless there is a "causal relationship between the infringing activity and [the] financial benefit." *Ellison*, 357 F.3d at 1079. Erickson does not contend that anyone visited Kast's website in order to view his photographs or purchased his services because they saw the photographs. The parties agree that no one visited the website or purchased anything after doing so. If Kast had a direct financial interest in every piece of content on this website that arguably made the website marginally more attractive or presentable, then the requirement of a causal link would be erased. Erickson does not argue the photographs were anything more, at best, than an "added benefit" to visitors of Kast's website, so the infringement did not confer a direct financial benefit on Kast as a matter of law. *See id.*

### b.  Avoidance of licensing fees

Erickson claims "Kast enjoyed a direct [financial] benefit from the illegal copying of Erickson's works by avoiding the license fees he would have otherwise been required to pay[.]"    Whether a vicarious infringer's avoidance of licensing fees constitutes a direct financial benefit as a matter of law is a question of first impression in this circuit.  No other circuit appears to have addressed it, either.[4]  We hold that it does not.

As an initial matter, Erickson's avoidance of fees claim cannot be premised on any unlicensed use by Kast of Erickson's copyrighted photographs.  That would result in direct liability, a theory the jury rejected.  *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001) ("[Direct] infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106.").  Additionally, to the extent Erickson suggests Kast owed licensing fees as a result of his vicarious infringement, his argument is plainly circular.

Instead, Erickson's argument must be that Kast received a direct financial benefit when Only Websites avoided Erickson's licensing fee.   Only Websites surely owed

---

[4] There is no consensus among district courts on this issue.  *Compare Oppenheimer v. Allvoices, Inc.*, No. C 14-00499 LB, 2014 WL 2604033, at *9 (N.D. Cal. June 10, 2014); *Klein & Heuchan, Inc. v. CoStar Realty Info., Inc.*, No. 8:08-cv-1227-T-30EAJ, 2009 WL 10670735, at *3 (M.D. Fla. Nov. 25, 2009)) *with Vander Music v. Azteca Int'l Corp.*, No. 2:08-cv-08184-JHN-RCx, 2011 WL 13177301, at *7 (C.D. Cal. Jan. 21, 2011) (Nguyen, J.); *Thomson v. HMC Grp.*, No. CV 13-03273 DMG (VBKx), 2014 WL 12589313, at *4 (C.D. Cal. July 25, 2014); *Broadvision Inc. v. Gen. Elec. Co.*, No. 08 Civ. 1478(WHP), 2009 WL 1392059, at *4 (S.D.N.Y. May 5, 2009); *F. E. L. Publ'ns, Ltd. v. Nat'l Conference of Catholic Bishops*, 466 F. Supp. 1034, 1042 (N.D. Ill. 1978).

Erickson a licensing fee, and saved money by failing to pay it, but the direct infringer's avoidance of fees alone cannot satisfy the requirement of a direct financial benefit to the vicarious infringer. Otherwise, the requirement of a direct financial benefit would be rendered meaningless, since—at least where, as here, licenses are for sale—a direct infringer necessarily saves money by failing to obtain a license. *See Worldwide Church of God v. Phila. Church of God, Inc.*, 227 F.3d 1110, 1114 (9th Cir. 2000) ("The existence of a license creates an affirmative defense to a claim of copyright infringement.").

Nor did Kast receive any other direct financial benefit as a result of Only Websites' failure to pay. In some circumstances, a direct infringer's avoidance of fees may prove financially advantageous to a vicarious infringer. For instance, Kast would have benefitted if Only Websites turned its lower costs from fee avoidance into lower prices for its website design services. *See In re Aimster Copyright Litig.*, 334 F.3d 643, 654 (7th Cir. 2003). But this benefit would not be "direct," since it would reach Kast only incidentally, via Only Websites' intervening decision to cut prices. *See id.* (noting in dicta that a dance hall operator benefitted only indirectly from an orchestra's avoidance of licensing fees). In any event, Erickson never claimed that Only Websites and Kast were able to offer services more cheaply or quickly *because* Only Websites infringed Erickson's copyright.

Erickson's alternative theory that Only Websites avoided the licensing fee in its capacity as Kast's agent, such that Kast himself is liable for its failure to pay, is also unpersuasive. Kast employed Only Websites to develop the website, but the latter's decision to infringe Erickson's copyright would have exceeded the scope of any agency

relationship that may have existed between them.  *See* Restatement (Third) of Agency § 2.02 cmt. h (illegal or tortious acts exceed the scope of an agency relationship).

Thus, Only Websites' avoidance of licensing fees did not confer a direct financial benefit on Kast as a matter of law.[5]

### c.  The "rush" completion of the website

Finally, Erickson contends Kast received a direct financial benefit because the photographs enabled Kast to "rush" the launch of his website.  Indeed, Kast conceded that he "rushed" the site out before it was finished in order to seek appointment to manage certain estates.  But Kast received no money, clients, business inquiries, or website visitors by rushing the website's completion before removing Erickson's photos.  Erickson never explained how using the photos allowed Kast to launch the website more quickly, or how the rushed launch enabled him to realize any profits at all.  Thus, the alleged rush conferred no financial benefit on Kast at all and fails as a matter of law. *See Ellison*, 357 F.3d at 1079.

## II.  The Contributory Liability Verdict

The jury also found that Kast contributorily infringed Erickson's copyright.  A party engages in contributory

---

[5] We find the parties' attempts to fit Kast's alleged avoidance of licensing fees into *Ellison*'s "draw" inquiry unmoving.  The "draw" inquiry assumes that the financial benefit in question is an increase in potential customers on the vicarious infringer's website or in his place of business.  By contrast, the supposed benefit of avoiding a licensing fee does not depend on how many people visit the website or buy anything when they are there.

copyright infringement when it "(1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement." *VHT*, 918 F.3d at 745 (citing *Perfect 10, Inc. v. Visa Int'l Serv., Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007)). On appeal, Kast challenges the jury instructions on the contributory liability claim.**[6]** We find his argument unpersuasive and affirm the contributory liability verdict.

Kast claims the trial judge erred by instructing the jury that "knowledge" for contributory infringement purposes includes having a "reason to know" of the infringement. According to Kast, only "actual knowledge" or "willful blindness" are sufficient.

Preliminarily, we note that Kast raised this issue for the first time in his supplemental opening brief, with the assistance of pro bono counsel. This argument exceeds the scope of the issues pro bono counsel was instructed to brief and argue. Kast himself did not object to this element of the jury instructions, so we ordinarily would not address it. *See Galvan v. Alaska Dep't of Corr.*, 397 F.3d 1198, 1204 (9th Cir. 2005) ("Courts generally do not decide issues not raised by the parties.").

However, even if we were to reach this issue, we would still uphold the contributory liability verdict. Kast did not raise this objection at trial, so it is reviewed for plain error.**[7]**

---

**[6]** Kast also claims insufficient evidence supports the contributory liability verdict. As with all his other sufficiency of the evidence challenges, this argument is waived. *See Nitco*, 491 F.3d at 1089.

**[7]** Erickson's claim that Kast waived even plain error review of this jury instruction is incorrect. Erickson is right that both parties stipulated to the relevant instruction. However, merely submitting an erroneous

"[I]n the civil context . . . plain errors should 'encompass only those errors that reach the pinnacle of fault envisioned by [the plain error standard].'" *C.B. v. City of Sonora*, 769 F.3d 1005, 1018 (9th Cir. 2014) (quoting *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1193 (9th Cir. 2002) (internal alterations omitted)).

Here, even if the "should have known" instruction was erroneous, the error was not plain. Inconsistency in our case law on the "knowledge" element of contributory liability precludes a finding of plain error. For instance, in *Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1072–73 (9th Cir. 2013), we held that "actual knowledge of specific acts of infringement" and "[w]illful blindness of specific facts" are the only two mental states that satisfy the "knowledge" element of contributory infringement. *Id.* But in *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 943 (9th Cir. 2011), we cited with approval a "know or have reason to know" instruction for contributory liability. *Id.* (citing *Napster*, 239 F.3d at 1020). Neither case is close to Kast's on the facts.[8] While *Luvdarts* was decided after *Louis Vuitton*, it did not explicitly overrule it. And both cases were decided several years after *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005), the case in which Kast claims the Supreme Court settled the

---

instruction does not waive a later challenge, so long as there is no evidence that the appellant considered and rejected a correct instruction "for some tactical or other reason." *See United States v. Perez*, 116 F.3d 840, 845–46 (9th Cir. 1997); *see also Crowley v. Epicept Corp.*, 883 F.3d 739, 748 (9th Cir. 2018). Here, there is no such evidence.

[8] In *Luvdarts*, the alleged contributory infringer was a wireless carrier whose network was used to send infringing multimedia content, *see* 710 F.3d at 1070, while in *Louis Vuitton*, it was a company that hosted websites that sold infringing goods, *see* 658 F.3d at 940.

matter in favor of an "actual knowledge" requirement. Without resolving the apparent tension between *Luvdarts* and *Louis Vuitton*, we hold that Kast has not demonstrated that the jury instructions were plainly erroneous.

Nor are we persuaded by Kast's other arguments against the contributory liability jury instructions. Kast challenges the instruction requiring the jury to find that "Only Websites did not have permission to copy or publish copies of [Erickson's] Photos and thus infringed [Erickson's] copyrights by doing so[.]" He insists this instruction "ask[ed] the jury to make a finding not in evidence." Kast failed to object to this instruction below, and, in any case, he is wrong on the merits. The parties stipulated that Only Websites designed the infringing website, which "included unauthorized copies of [Erickson's] Photos" copied from Wells Fargo's website. And Erickson elicited unrefuted testimony that neither Only Websites nor Kast had permission to use the photos. Thus, these facts were in evidence.

## III.    The Willfulness Finding

The jury also found Kast's vicarious and contributory infringement were willful. Kast claims the district court erred when it instructed the jury that it could find that Kast's infringement was willful if Kast "should have known that [his] acts infringed plaintiffs' copyright." We agree and remand the issue of willfulness to the district court on the existing record.

### a.    *Whether the willfulness instruction was erroneous*

The jury's willfulness finding is relevant to its award of statutory damages. Absent a finding of willfulness, the jury may award statutory damages "in a sum of not less than $750

or more than $30,000" per work infringed.  17 U.S.C. § 504(c)(1).  However, if the copyright owner proves that the infringement was "willful," the court may increase the statutory damage award to $150,000 per work infringed.  *Id.* § 504(c)(2).

At Kast's trial, the judge instructed the jury: "Infringement is considered willful when . . . (1) the defendant knew that those acts infringed plaintiffs' copyrights; or, (2) the defendant *should have known* that those acts infringed plaintiffs' copyright; or, (3) the defendant engaged in conduct that was reckless or demonstrated a reckless disregard for plaintiffs' copyrights." The jury found that Kast's contributory and vicarious infringement was willful and awarded Erickson $450,000 in statutory damages.  Had the jury not made this finding, Erickson's statutory damages could not have exceeded $90,000.

"A determination of willfulness requires an assessment of a defendant's state of mind."  *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1186 (9th Cir. 2016).  "[T]o prove willfulness under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of reckless disregard for, or willful blindness to, the copyright holder's rights."  *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 991 (9th Cir. 2017) (quoting *Wash. Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 674 (9th Cir. 2012)) (alteration in original).

A "should have known" instruction does not fit within this framework because it is a negligence standard.  To say that a defendant "should have known" of a risk, but did not know of it, is to say that he or she was "negligent" as to that risk.  *See Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S.

754, 770 (2011); *see also BMG Rights Mgmt. (US) LCC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 310 (4th Cir. 2018) ("The formulation 'should have known' reflects negligence"); *Swinton v. Potomac Corp.*, 270 F.3d 794, 803 (9th Cir. 2001) (noting that "should have known" is a negligence standard).

Negligence is a less culpable mental state than actual knowledge, willful blindness, or recklessness, the three mental states that properly support a finding of willfulness. *See Global-Tech Appliances*, 563 U.S. at 770; *Unicolors*, 853 F.3d at 992. "[A] willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts. By contrast, a reckless defendant is one who merely knows of a substantial and unjustified risk of such wrongdoing, and a negligent defendant is one who should have known of a similar risk but, in fact, did not." *Global-Tech Appliances*, 563 U.S. at 769–70 (citations omitted). Thus, Kast is correct that the judge permitted the jury to find willfulness on the basis of a lesser mental state than our cases demand.[9]

Erickson's alternative interpretation of the jury instructions is unpersuasive. Erickson claims that an infringer who "should have known" of the infringing activity

---

[9] The jury instruction was phrased in the disjunctive, that is, the jury was asked whether Kast "knew" of, should have known of, *or* was reckless with regard to Only Websites' infringement. Thus, implicit in a finding under the "should have known" prong would be a conclusion that Kast did not, in fact, know of the risk or fact of infringement. *See Global-Tech Appliances*, 563 U.S. at 770 (explaining that a negligent defendant, by definition, does not know of a risk).

has "constructive knowledge" of the infringement, and that constructive knowledge is sufficient for willfulness.

Erickson is correct that a "should have known" instruction conveys the concept of "constructive knowledge." *See Knowledge*, Black's Law Dictionary (10th ed. 2014) ("Constructive knowledge" is "[k]nowledge that one using reasonable care or diligence should have, and therefore that is attributed by law to a given person."). The problem for Erickson is that "constructive knowledge" is distinct from, and less culpable than, any of the mental states that support a finding of willfulness. Erickson cites extensively from non-binding, out-of-circuit, and district court authorities indicating that constructive knowledge can support a willfulness finding, but all are incompatible with our repeated requirement of actual knowledge, willful blindness, or recklessness.[10] We have never held merely negligent conduct to be willful, and we decline to do so now.

---

[10] Erickson relies heavily on our "see also" citation, in *Washington Shoe*, to a statement by a New York district court: "[t]o prove willfulness, plaintiffs must show that the infringer had actual *or constructive knowledge* that it was infringing the plaintiffs' copyrights or else acted in reckless disregard of the high probability that it was infringing plaintiffs' copyrights." *See Wash. Shoe*, 704 F.3d at 674 (citing *Arclightz & Films Pvt. Ltd. v. Video Palace Inc.*, 303 F. Supp. 2d 356, 361–62 (S.D.N.Y. 2003) (emphasis added)). This oblique citation does not state the law of this circuit. It is dicta. *Washington Shoe* analyzed the infringer's willfulness in the context of determining whether the infringer "expressly aimed . . . an intentional act" at the State of Washington, for purposes of personal jurisdiction. *See Wash. Shoe*, 704 F.3d at 673–74 (citing *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011)). The question of statutory damages was not before the court. It is doubly dicta because the *Washington Shoe* defendant's willful infringement was based on actual, not constructive, knowledge of infringing activity. *See* 704 F.3d at 675. In fact, in the

### b. *Whether the error requires reversal*

The erroneous willfulness instruction was likely prejudicial to Kast, so remand is required. *See Chuman*, 76 F.3d at 294. While the evidence may have established that Kast was negligent, it is much less clear that it established recklessness, willful blindness, or actual knowledge. Kast presented evidence that he did not know Only Websites was or might be infringing. Kast's contract with Only Websites suggests that Kast reasonably believed it was Only Websites' responsibility to obtain licenses for Erickson's photos. *See VHT*, 918 F.3d at 748 ("[C]ontinued use of a work even after one has been notified of his or her alleged infringement does not constitute willfulness so long as one believes reasonably, and in good faith, that he or she is not infringing." (citing *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1228 (9th Cir. 2012)). Several of Kast's other actions also suggest that he was not reckless with respect to Erickson's rights: he obtained licenses for the photos that he supplied to Only Websites, and promptly removed the infringing photos when Erickson asked. If the jury had been properly instructed, it might well have refused to find Kast willful on this record.

We are unpersuaded by Erickson's contention that the jury's contributory infringement verdict indicates that the jury would have found willfulness even without the "should have known" instruction. Erickson claims that a contributory infringer has "knowledge" of the direct

---

sentence to which the citation to *Arclightz* is appended, we stated a requirement that the defendant be "actually aware" of the infringement or have acted with reckless disregard for or willful blindness to the copyright holder's rights. *See id.* at 674 (citing *Louis Vuitton*, 658 F.3d at 944).

infringer's conduct if he "know[s] or ha[s] reason to know" of the direct infringement.  *See Louis Vuitton*, 658 F.3d at 943 (citing *Napster*, 239 F.3d at 1020).  Erickson contends that, if Kast had "knowledge" for purposes of contributory infringement, then he had "knowledge" for purposes of the willfulness inquiry.  However, a "knew or had reason to know" instruction could be satisfied by a negligence finding via its second prong, so the contributory infringement finding does not necessarily mean the jury would have found that Kast was actually aware of, or willfully blind or reckless with respect to, Only Websites' infringement.  In any case, *Louis Vuitton* is inapposite because it addressed a contributory infringer with actual, rather than constructive, knowledge.  *See id.* at 944.

Accordingly, we remand the issue of willfulness to the district court.  We disagree with Kast's claim that "the record permits only one resolution of the factual issue" of willfulness, *see Pullman-Standard v. Swint*, 456 U.S. 273, 292 (1982), and decline his invitation to enter judgment in his favor.

## IV.   Kast's Remaining Evidentiary and Procedural Arguments

Kast makes several additional evidentiary and procedural arguments, primarily in his pro se briefs.  We summarize these below.  None are persuasive.

Kast claims he was an improper defendant because "Erickson should have sued Atherton, not Kast."  Even if Atherton Trust is also liable for the infringement, Kast would be jointly and severally liable, so he is a proper defendant.  *See Range Road Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1151, 1155 (9th Cir. 2012) (imposing joint

and several liability in copyright infringement case on corporate entity and its sole officer and director).

Kast also argues that the district court made numerous discovery and evidentiary errors, including that it should have excluded information about Kast's finances, it permitted Erickson to withhold evidence relating to his finances, and it permitted Erickson to introduce improper character evidence. None of these alleged errors call for reversal. For instance, Erickson's questions regarding Kast's finances explored the ownership of various businesses and trusts, not his personal wealth. Because such questions arguably related to both vicarious liability and willfulness, *see Amazon*, 508 F.3d at 1173 (requiring control for vicarious liability); *Castle Rock Entm't v. Carol Publ'g Grp., Inc.*, 955 F. Supp. 260, 267 (S.D.N.Y. 1997) (considering whether "the defendants are sophisticated" in determining willfulness), allowing it was not an abuse of discretion. Likewise, although Kast points to billing line items to suggest that Erickson withheld evidence, nothing suggests any documents resulted from those communications. Finally, even assuming Erickson's prior-relationship questioning was improper, Kast fails to show that this error—or, in fact, any of the other alleged evidentiary errors—was prejudicial. *Kulas*, 255 F.3d at 783.

## CONCLUSION

We vacate the jury's finding of vicarious liability. We affirm the jury's finding of contributory liability and therefore affirm the judgment. *See Hopkins v. Dow Corning Corp.*, 33 F.3d 1116, 1119, 1126, 1128 (9th Cir. 1994) (affirming judgment because jury's verdict on at least one theory of liability was upheld); *DeWitt v. W. Pac. R.R. Co.*, 719 F.2d 1448, 1451 (9th Cir. 1983) (same). We reverse the

jury's finding of willfulness and remand the issue of statutory damages to the trial court.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.   EACH PARTY TO BEAR ITS OWN COSTS.**